COWHIG et al. v. NATIONAL MILITARY ESTABLISHMENT et al.

Civ. A. 2452–48.

United States District Court
District of Columbia.

June 27, 1952.

Joseph W. Worthen, Boston, Mass., Allen H. Gardner, Washington D. C., for plaintiff.

Charles M. Irelan, U. S. Atty., Ross O'Donoghue, Asst. U. S. Atty., Joseph A. Sommer, Asst. U. S. Atty., for defendant.

MORRIS, District Judge.

This is a proceeding brought by the plaintiff to secure relief under the provisions of the Lucas Act, 41 U.S.C.A. § 106 note, for losses alleged to have been incurred and suffered in the carrying out of a contract with the defendants' Office of

Scientific Research and Development, which losses, it is alleged, were incurred without negligence on the part of the plaintiff. The issues in the case are extremely complicated and, to accomplish some simplification, but not much, an order of severance of certain of the issues was made so as to permit the consideration and determination of certain of such issues prior to the trial and determination of others.

Under the provisions of the Lucas Act it is required that any party seeking relief from losses under any particular contract must offset against such losses profits made on other contracts with the Government during the critical period. It is undisputed that Walter W. Cowhig formed a partnership with one Carl White, with the firm name of White Research Associates. Subsequently, first Cowhig, and then White modified the partnership agreement, in which each described himself as a partner individually and as trustee, it being asserted that as trustee certain interests in the partnership were for the benefit of their families. Thereafter the plaintiff, individually and as trustee, acquired the interest of White individually and as trustee. During the periods involved here, the said Walter W. Cowhig organized other partnerships, known as Cowhig Engineering Associates, Jamaica Machine Company, and Wico Nut Sales Company, all of which had contracts with agencies of the United States in connection with defense purposes, in some of which partnerships he also described himself as a partner individually and as trustee, and by the evidence in the hearing of this case, he claimed to be a partner as trustee for the benefit of members of his family. These enterprises all operated in the same building and to a large extent used the same machinery and labor, it being insisted that, by an accounting system, charges were made as to each for the use that each made of such common equipment and personnel.

The idea of a person being a partner with himself as an individual and with himself as trustee is something so utterly incomprehensible to me that I cannot give any serious consideration to such a status.

Whatever may be the results of certain entities for certain purposes, it is beyond question in my mind that the Congress, in the enactment of the Lucas Act, did not have the slightest intention to award the equitable, even gratuitous, relief to a person for losses suffered in connection with one contract when that person enjoyed offsetting profits on other contracts with the Government. In many well recognized legal entities, equity will pierce the corporate form to do justice. Here the obvious intent of the Act of Congress would be frustrated if artificial forms, which have no reality, were permitted to isolate losses from profits. There cannot be the slightest doubt that Walter W. Cowhig was the central, controlling and directing personality in each of the enterprises in which these losses and profits occurred. Counsel will prepare an appropriate order carrying this decision into effect.